JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON MAYO, an individual,<br>  Plaintiff,<br><br>  v.<br><br>ASPIRE BAKERIES, LLC., a<br>Delaware Corporation; and DOES<br>1 through 50, inclusive,<br>  Defendants. | 2:26-cv-05885-DSF-RAO<br><br>Order GRANTING Plaintiff's<br>Motion to Remand (Dkt. 11) |

Defendant Aspire Bakeries, LLC removed this case from Los Angeles Superior Court based on federal question jurisdiction. Dkt. 1 (NOR) at 2. Aspire moves to dismiss. Dkt. 7-1 (MTD). Plaintiff Marlon Mayo opposes the motion to dismiss, dkt. 10 (Opp'n to MTD), and moves for remand, dkt. 11 (MTR). Aspire opposes the motion to remand. Dkt. 13 (Opp'n to MTR). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Background

Mayo was employed by Aspire, most recently as a Sanitation Foreman, from approximately March 4, 1998 to June 17, 2024. Dkt. 1-3 (Compl.) ¶¶ 9, 13. Mayo's employment was governed by a collective bargaining agreement. See Dkt. 1-2 (CBA). Due to the physical demands of his work, Mayo developed "debilitating back and leg conditions," which impaired his ability to "stand, walk, lift, and perform manual labor." Compl. ¶ 10. He alleges this medical condition

constituted a physical disability, Aspire was aware of his disability, and he needed medical treatment and related absences from work.  Id. Mayo also claims he was subject to unlawful payroll practices related to Aspire's failure to accrue sick leave properly, credit vacation time, assess attendance "occurrences," and administer discipline.  Id. ¶ 11. While employed by Aspire, Mayo filed formal grievances with his union concerning what he considered violations of applicable labor laws.  Id.

Around June 2024, Mayo requested a medical leave of absence and reasonable accommodations for his disability.  Id. ¶ 12.  Shortly following his request, Aspire terminated his employment on the basis of his attendance.  Id. ¶ 13.  Mayo contends Aspire's justification was pretext for dismissing him based on his disability, need for medical leave, and previous complaints regarding unlawful payroll practices. Id. ¶¶ 13-15.

On April 29, 2026, Mayo filed a complaint in Los Angeles Superior Court alleging eleven state law causes of action: (1) disability discrimination; (2) failure to provide reasonable accommodations; (3) failure to engage in the interactive process; (4) failure to prevent discrimination; (5) retaliation in violation of California's Fair Employment and Housing Act (FEHA); (6) interference with rights under the California Family Rights Act (CFRA); (7) retaliation in violation of California Labor Code section 1102.5; (8) retaliation in violation of California Labor Code section 98.6; (9) retaliation in violation of California Labor Code section 234; (10) wrongful termination in violation of public policy; and (11) unfair competition. Compl. at 1.

## II. Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action.  28 U.S.C. § 1441(a).

2

"The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that removal is proper." <u>Provincial Gov't of Marinduque v. Placer Dome, Inc.</u>, 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing subject matter jurisdiction, the suit must be remanded. 28 U.S.C. § 1447(c). Generally, doubts as to removability are resolved in favor of remanding the case. <u>See</u> <u>Shamrock Oil & Gas Corp. v. Sheets</u>, 313 U.S. 100, 108-109 (1941); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).

### III. Discussion

Aspire argues that Mayo's claims are preempted under Section 301 of the Labor Management Relations Act (LMRA), 20 U.S.C. § 185, and therefore arise under federal law. NOR ¶ 35. It asserts this Court has federal question jurisdiction over Mayo's claims, NOR ¶¶ 13, 29, 34-36, and that preemption of Mayo's claims warrants their dismissal, MTD at 18. Mayo argues that his claims do not meet the test for LMRA preemption and that the Court must remand for lack of subject-matter jurisdiction. MTR at 1-2.

### A.    Local Rule 7-3

Aspire argues that Mayo's motion to remand should be denied because his counsel failed to comply with the meet and confer requirements of Local Rule 7-3. Opp'n to MTR at 2. Aspire asserts that the parties did meet and confer regarding the motion to dismiss, MTD at 4-5, but that Mayo did not contact Aspire's counsel to discuss the motion to remand, Opp'n to MTR at 2. Aspire does not claim any prejudice due to Mayo's failure to meet and confer, and the issues and briefing concerning the motions to remand and dismiss are largely identical; Aspire contends the LMRA preempts Mayo's claims and Mayo disagrees. Considering the extent to which the issues overlap and the Court's independent obligation determine its jurisdiction, <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006), the Court finds Mayo's failure to meet and confer insufficient grounds to deny his motion.

## B.    Federal Question Jurisdiction and Preemption

District courts have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Under the "well-pleaded complaint rule, . . . federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "[N]ormally, federal preemption is a defense that does not authorize removal to federal court."  Curtis v. Irwin Indus., Inc., 913 F.3d 1146, 1152 (9th Cir. 2019).  However, preemption under § 301 of the LMRA is an exception to the well-pleaded complaint rule.  Id.  Section 301 has "such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim.'"  Id. (quoting Metro. Life Ins. v. Taylor, 481 U.S. 58, 65 (1987)). "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court."  Id.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a).  "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts."  Curtis, 913 F.3d at 1151 (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985)).

The Ninth Circuit has devised a two-step test to determine if a claim is preempted by § 301.  First, the district court "ask[s] whether the asserted cause of action involves a right that exists solely as a result of the CBA."  Curtis, 913 F.3d at 1152 (citation omitted).  "If so, 'then the claim is preempted, and [the] analysis ends there.'"  Id. at 1153 (quoting Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007)).  The second step asks "'whether a plaintiff's state law right is substantially dependent on analysis of [the CBA],' which turns on

whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." Id. (quoting Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1032 (9th Cir. 2016)). Interpretation, in this context, is defined narrowly and "it means something more than 'consider,' 'refer to,' or 'apply.'" Matson v. United Parcel Serv., Inc., 840 F.3d 1126, 1132 (9th Cir. 2016). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). Further, "[i]f the claim is based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Matson, 840 F.3d at 1132 (quoting Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 591 (9th Cir. 2001) (en banc)).

### 1.    Judicial Estoppel

Arise argues that Mayo is judicially estopped from contending the claims are not governed by the CBA. Opp'n to MTR at 6-7. It points to Mayo's prior admission in a related lawsuit that the CBA covers the disputes and requires employees to resolve issues through the grievance process provided in the CBA. Id. at 6; see NOR ¶ 30.

Judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim on which it has prevailed in a previous proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The Supreme Court identified three factors courts should consider in determining whether the doctrine of judicial estoppel applies in a particular case:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is

> whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire, 532 U.S. at 750–51 (citations omitted).

Aspire argues that "any contention now that the CBA does not apply" is irreconcilably inconsistent with Mayo's counsel's declaration that the CBA contains language that compels employees to resolve issues through the prescribed grievance process. Opp'n to MTR at 7. Mayo contends that judicial estoppel does not apply because he does not dispute in his motion to remand whether the CBA applies—only whether his claims are preempted by the LMRA. Id. at 3.

The Court agrees with Mayo that counsel's statements in previous state court litigation are not inconsistent with Mayo's argument against preemption. The standard for finding LMRA preemption is not whether the CBA or its terms will ultimately govern Mayo's claims, but whether the right Mayo seeks to vindicate either "exists solely as a result of" or "is substantially dependent on analysis of" the CBA. Curtis, 913 F.3d at 1152. Mayo's statements in prior litigation about the CBA's grievance process do not establish either prong of the test. Additionally, this Court has an independent obligation to determine whether it has subject matter jurisdiction. Arbaugh, 546 U.S. at 514; see Fed. R. Civ. P. 12(h)(3). A previous declaration in state court about the CBA's grievance procedure does not assist in that endeavor. Therefore, Aspire cannot use judicial estoppel at this stage of litigation to establish federal jurisdiction to support removal.[1]

### 2.     Step One of the Preemption Test

Aspire argues that the CBA governs the aspects of Mayo's employment at issue in this litigation, and that therefore the rights he seeks to vindicate "flow directly from and exist solely by virtue of the

---

[1] Because the Court does not find that Mayo's positions are clearly inconsistent, it does not reach the second and third New Hampshire factors.

governing CBA."  Opp'n to MTR at 8.  Aspire then concludes that "those rights arise from the CBA rather than from any independent source of state law[.]"  Id.

In Renteria-Hinojosa v. Sunsweet Growers, Inc., 150 F.4th 1076 (9th Cir. 2024), the Ninth Circuit rejected reasoning similar to Aspire's argument here.  There the district court dismissed claims as preempted under the LMRA and remanded the remaining state law claims.  Renteria-Hinojosa, 150 F.4th at 1083.  Defendant employer appealed the remand orders, arguing the claims were preempted because they "necessarily allege[d] a breach of the CBA."  Id. at 1089.  The Ninth Circuit affirmed, emphasizing that "a state law claim is preempted [at step one] only if a CBA is the '*only source*' of the right underlying the claim, as opposed to an additional source."  Id. (emphasis added).  The circuit held that, where "state law is *a source*" for a claim, "it does not matter whether [the plaintiff's] factual allegations could also support claims for breach of the CBAs at step one."  Id. (emphasis added).

Aspire asserts that all of Mayo's claims arise solely from the CBA with no basis in state law.  MTR at 7-8.  It argues that Mayo's "right to be free from improper [attendance] occurrence-accumulation, to have his sick and medical leave credited, to receive progressive discipline before discharge, and to pursue workplace grievances are not rights conferred by state law independent from contract; they are rights that flow directly from and exist solely by virtue of the governing CBA."  Opp'n to MTR at 8.  But Aspire lists issues governed by the CBA that might be relevant to this litigation, not the actual rights Mayo seeks to vindicate in his state law claims.  And, that Mayo's claims could have been brought for breach of the CBA does not, on its own, establish preemption.  See Renteria-Hinojosa, 150 F.4th at 1089.  Instead, for Mayo's claims to be preempted at step one, Aspire must show that the CBA is not only a source, but the "only source" of Mayo's rights.  Renteria-Hinojosa, 150 F.4th at 1089.  It has not done so here.

### 3. Step Two of the Preemption Test

Aspire argues that, to the extent Mayo's claims are not preempted under the first step of the test, they are preempted under the second step because "their resolution substantially depends on interpretation of the CBA's specific provisions." Opp'n to MTR at 10. The Court will consider the claims in the order in which Aspire presents them in its opposition to Mayo's motion to remand.

#### a. Wrongful Termination Claim

In his tenth cause of action, Mayo claims he was wrongfully terminated in violation of public policy as reflected in California state law, including FEHA and CFRA. Compl. ¶¶ 96-100. Aspire provides a laundry list of CBA provisions it asserts must be interpreted to resolve Mayo's wrongful termination claim. Opp'n to MTR at 10. Aspire cites provisions governing attendance "occurrences," whether those "occurrences" were excused as sick leave, the application of progressive discipline, termination for "just cause," grievance procedures, and discharge for union activity, as well as the interplay among those provisions. Id. at 10-12 (citing CBA, Arts. 7, 13, 20, 21, 22). It argues that evaluating Mayo's allegations of improper attendance discipline and his ultimate termination—which Aspire justified based on his attendance "occurrences"—necessarily requires "interpretation" of the various cited provisions. Id. at 10.

In his motion to remand and opposition to Aspire's motion to dismiss, Mayo argues that Aspire raises only factual questions about the CBA's application, not any disputed language or provisions requiring the Court's interpretation. MTR at 6-7; Opp'n to MTD at 7-8. The Court agrees that merely listing relevant CBA provisions, as Aspire does here, does not demonstrate "any *interpretive dispute* about a CBA term that must be resolved to determine" the outcome of Mayo's claim. Renteria-Hinojosa, 150 F.4th at 1090 (emphasis added). Ninth Circuit precedent requires more than mere application of the CBA for LMRA preemption under step two. See Curtis, 913 F.3d at 1153. "'Interpretation' is construed narrowly," and "claims are only

8

preempted [at step two] to the extent there is an active dispute over the meaning of contract terms." Id. (citation omitted).

Aspire responds by asserting that there is a "direct dispute about what the CBA's occurrence provisions mean and how they operate" rather than "how they were applied to a particular employee in a discriminatory manner" because Mayo's allegations that "the occurrences themselves were incorrectly counted" mean the Court must answer several questions requiring interpretation of the CBA. Opp'n to MTR at 19-20. Those questions include determining what an "occurrence" is under the CBA, when an absence qualifies as paid sick leave, how the rolling twelve-month lookback is calculated, whether Mayo's absences were properly classified, whether Aspire correctly applied the half-occurrence rule, and whether the doctor's note was satisfied and the consequences thereof. Id.

However, despite using the word "dispute," Aspire fails to identify how answering these questions constitutes interpretation as defined by the Ninth Circuit's LMRA preemption test. It is true that a court may need to read the CBA, analyze the complex interplay of its provisions, and apply it to the facts to determine whether Aspire or Mayo is correct. But mere application of the CBA—even if complicated—does not rise to the level of interpretation required for the Court to find the wrongful termination claim preempted.

Additionally, Mayo's claim rests on allegations that he was terminated because of his disability in violation of California law, not on allegations that Aspire violated the CBA. See Compl. ¶¶ 12-15, 96-98. The second prong of the preemption test looks to "whether [Mayo's] *state law right*" requires interpretation of the CBA. Kobold, 832 F.3d at 1033 (emphasis added). "If the *claim* is plainly based on state law," the fact that Aspire may "refer[] to the CBA in mounting a defense" does not mandate LMRA preemption. Cramer, 255 F.3d at 691 ("[T]he need to interpret the CBA must inhere in the nature of the plaintiff's claim."). Aspire asserts that "the resolution of [Mayo's] claim turns on what [] CBA provision[s] mean[]," referring to Mayo's allegations that the accumulation of attendance "occurrences" was pretext for his

unlawful termination.  Opp'n to MTR at 18-19.  Mayo does allege in his complaint that Aspire used the accumulation of "occurrences" as pretext for his firing.  See Compl. ¶¶ 13, 14, 96-98.  But the Court does not agree that Mayo's *state law right* is substantially dependent on whether "occurrences" were correctly calculated; rather, accumulated "occurrences" are relevant to Aspire's defense that it properly terminated Mayo according to the CBA's terms.  Therefore, Aspire has not carried its burden of establishing federal jurisdiction, by way of LMRA preemption, for the wrongful termination claim.

> b.    Disability, Accommodation, and Leave Claims

Aspire argues that Mayo's first through sixth causes of action cannot be resolved without interpretation of the CBA's terms because they "all turn on the same core factual dispute" of "whether [Mayo's] termination on the basis of accumulated attendance occurrences was lawful."  Opp'n to MTR at 13.  Aspire contends that "a court cannot determine what accommodations were available to Plaintiff without examining what positions exist and what constraints the CBA places on reassignment."  Id. at 13-14 (citing CBA, Arts. 5, 7).  Additionally, Aspire argues that, because Article 16 of the CBA incorporates the statutory obligations of state laws underlying Mayo's CFRA and FEHA leave and accommodation claims, adjudication of those claims requires "interpretation" of the CBA.  Id. at 14-15.  But again, Aspire demonstrates only that a court may have to examine or apply the CBA's provisions, not that there is any interpretive dispute over the meaning of the CBA's terms.  See Renteria-Hinojosa, 150 F.4th at 1090; Curtis, 913 F.3d at 1153.  Finally, Aspire describes the terms of Article 23 governing leaves of absence, Opp'n to MTR at 14-15, but does not explain the provision's relevance or application, let alone how it must be interpreted to assess Mayo's claims.  Therefore, Aspire has failed to establish that the disability, accommodation, and leave claims are preempted by the LMRA under step two.

10

### c.    Labor Code Retaliation Claims

Aspire argues that Mayo's seventh through ninth causes of action for retaliation "invoke the CBA's grievance procedures" and are preempted because they are "inseparable from the CBA framework that governed those complaints."  Opp'n to MTR at 15.  Each retaliation claim, Aspire contends, requires the Court to determine:

> (1) whether Plaintiff's absences constituted protected sick leave under the CBA that could not be counted as occurrences under Article 7; (2) whether the progressive discipline steps imposed under the attendance policy were properly applied under Article 7; (3) whether Plaintiff's "formal grievances" were filed through the CBA's mandatory grievance and arbitration procedures under Article 22; and (4) whether Defendant's termination of Plaintiff was consistent with the CBA's requirements for just cause discharge under Article 21.

Id. at 16.

Again, Aspire catalogues CBA provisions requiring application and analysis without identifying any interpretive dispute giving rise to LMRA preemption.  It has therefore not met its burden, and the retaliation claims are not preempted.

### d.    Unfair Competition Claim

Aspire argues that Mayo's eleventh cause of action for unfair competition should be dismissed because it is derivative of other preempted claims.  Opp'n to MTR at 17.  Because Aspire has not established that any of Mayo's claims are preempted by the LMRA, his unfair competition claim is also not preempted.

## C.    Attorneys' Fees

Mayo requests attorneys' fees and costs incurred as a result of removal.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a

result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." <u>Martin v. Franklin Cap. Corp.</u>, 546 U.S. 132, 141 (2005). Although it was unsuccessful, Aspire had an objectively reasonable basis for removal. Mayo's request for fees and costs is DENIED.

### IV. Conclusion

Mayo's motion to remand is GRANTED and his request for attorneys' fees and costs is DENIED. The case is REMANDED to the Superior Court of California, County of Los Angeles.

IT IS SO ORDERED.

Date: July 6, 2026

_____
Dale S. Fischer
United States District Judge

12